The declaration filed in the Circuit Court for the county of Washington upon a writ issued in 1812, and returned to the next term, claimed damages for the breach of a covenant alleged to have been made by writing, under seal the 17th of June, 1797, for the delivery of a negro girl on the 15th of October, 1797. The first plea of the defendant to this declaration stated an action on the same article by Robert Allen in the County Court of Washington, commenced in 1798, upon which a verdict was given on the plea of non est factum
for the defendant, which was appealed from to the Superior Court for the district of Washington, March term, 1799; a verdict was given for the defendant upon the same plea in the said March term, 1799. A new trial was moved for and refused. The plea stares further, that the verdict remains in force, and that no reasons in arrest of judgment were filed. To this plea the defendant demurred. The second plea states the same *Page 32 
proceedings and verdict, and that judgment was Tendered upon it. To this plea the plaintiff, James Allen, replied nul tiel
record. The third plea states the same proceedings up to the verdict inclusive, and that the plaintiff, Allen, without the consent of the Court, took the papers surreptitiously from the files of the court. To this plea the plaintiff demurred. The fourth and fifth pleas deny the assignment from Robert Allen to Lanning and from Lanning to James Allen, and issues to the country are joined thereon. The sixth plea states on oath, that the defendant never delivered the writing declared on to Robert Allen, and so not his deed. Upon this issue is joined. The seventh plea states all the proceedings aforesaid in the County and Superior Court, stating a judgment in the County Court, and not any judgment in the Superior Court, but a verdict, which he avers to be in full force. A new trial, it states, was moved for and refused, then a bill filed by Robert Allen, an injunction obtained, a trial in the Court of Equity whether the deed of Blackburn or not, and a verdict for the defendant, and the bill dismissed without prejudice, and pleads the same in bar. To this plea the defendant demurred. The eighth plea states all the same proceedings, with the addition of a judgment in the county and superior courts. To this plea the plaintiff replied nul tiel record. The ninth plea states a bill for an injunction against a judgment upon the same identical bond, a final hearing in 1802, in March term, and a dismission of the bill without prejudice. To this plea the plaintiff demurred. In September term, 1816, a jury in the circuit court for the county of Washington tried the issues of fact and found a verdict for the plaintiff. The counsel agreed this court should decide upon the several pleas of nultiel record, and also upon the several demurrers, the same having been heretofore brought into this court by appeal, and having been retained by said counsel in this court whilst the said issues of fact were *Page 33 
remanded for trial to the said circuit court. Upon the trial of these issues of fact, a bill of exception was filed, which, if needful, will be attended to in its proper place. It, however, relates to the evidence relative to the assignment and execution of the bond.
The first question we will take up is that which arises upon the demurrer to the first plea. It is a good plea in bar to state a verdict in the year 1799, in Washington superior court, that a new trial was moved for and refused, and that the judgment had not been arrested? An agreement was made by the parties, in the circuit court, March term, 1816, "that all the records read in this cause shall be made a part of the record, to be sent up to the supreme court." It is well known to the Court, and proved by the Acts 1805, c. 45, section 1, and 1813, c. 39, section 1, that the practice at the time when these verdicts were rendered was not to enter a judgment, but to understand one and to issue a fi. fa. as if the judgment had been regularly entered. The record spoken of in the bill of exceptions as having been offered and refused by the judge on the trial of the issues of fact sets forth the fi. fa. verbatim which Issued upon the verdict in the superior court of Washington, for the purpose of showing the former verdict, upon the same point, between these parties or him to whom the plaintiff is privy. The Act of 1805, c. 45, provides "that all verdicts heretofore rendered, and acquiesced in, shall be admitted as evidence in as full and ample a manner as if the judgment had been entered." The Act of 1813, c. 39, section 1, is to the same effect. These acts, it is said, do not extend to the present case because not acquiesced in. There was an acquiescence in the verdict given in the court of equity until the commencement of this action in 1812; and, also, there was an acquiescence in the verdict at law during the same time. If it be said there was no other court in which the plaintiff could proceed, and so his acquiescence not voluntary, he certainly could *Page 34 
have proceeded in equity at any time after the dismission of his bill without prejudice; acquiesced, in the first act, means unappealed from, and not altered by appeal or error. In the second act, it means not rendered abortive by a new trial or motion in arrest of judgment; for, if set aside by any of these proceedings, it was not then to be given in evidence under these acts. This case is within the operation of these acts, otherwise the term acquiescence will be of no effect; for what lapse of time shall be an acquiescence is wholly uncertain; whether it must be one week, month, year, or ten years, no one can tell. Let us seek then for the rule of decision which existed prior to these acts. We find it in 2 Hay. 377. Though the judgment did not not appear in the record together with the verdict, the Court held that the judgment should be understood as if it had been entered; so here, and in all cases where the judgment ought to be exhibited, it will be presumed if necessary; otherwise, in every case where the law requires its production, the acts of the Court will be invalidated. Purchasers in some cases, plaintiffs whose demands are founded upon judgments,scire faciases founded upon judgments, goods fraudulently conveyed and seized by the sheriff by virtue of his fi. fa.
against the vendor, judgments unsatisfied, which are to be revived, as it is called, against heirs or executors, or where a year has elapsed and no step taken in that time, — these will be all overturned and annulled, if the judgment be not understood from an unreversed verdict. It will not be enough to say that a judgment not being thereon, but only a verdict, the latter shall not be received because it may be that the judgment was arrested or a new trial granted. That presumption may fairly arise where it is usual to enter judgments; but not where it is unusual. In the latter case, the presumption will not arise; and if it did for a moment would be entirely removed by the production of a fi. fa. which carried it into execution. *Page 35 
We must not, in a country where judgments are not entered, apply the same rules that prevail in countries where they are, and not allow of an equivalent or substitute for the judgment required. We must understand or imply the actual existence of the judgment from the verdict. This rule is equally to be used for the protection of a plaintiff who takes out process of execution on a verdict, as the sheriff who acts under it. Will the defendant in the execution be allowed to recover against the plaintiff for taking out execution without a judgment, at the same time that it protects all others? Shall the plaintiff be made to reimburse him money, justly received from him, for no other reason than this? He has honestly and fairly taken out his execution in the usual course of proceedings, not knowing or even suspecting he was doing any thing wrong, or that there was any thing more to be done.
The spirit of the Acts of 1805 and 1813 is in concert with this reasoning; and immediately followed a decision made in March term, 1805. The demurrer therefore to the first plea ought to be overruled, and judgment be given on that plea for the defendant. The record offered upon the trial of the issues in fact ought, for the above reasons, to have been received. It ought to have been received without the circumstance we are about to mention, much more so with it. That record states a fi. fa. to have issued upon the verdict for costs in favor of the defendant below. It sets forth a recovery of the costs, and states that he is convict thereof, as appears of record. Here is a recital in the writ of a judgment, and is proof by record that it existed, at least in contemplation of the Court. The same reasons apply to all the demurrers, and to the replication of nultiel record. Judgment ought to be given upon the pleas thus replied to, or demurred to in favor of the defendant. And as to the finding of the jury upon the issues, no judgment ought to be given for the *Page 36 
plaintiff; for no verdict can find a fact contrary to that which appears in the verdict for the defendant.